Filed 11/9/23  P. v. Ramirez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E080147 |
| v. | (Super.Ct.No. RIF107511) |
| CESARIO RAMIREZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Thomas E. Kelly, Judge. (Retired judge of the Santa Cruz Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

William Paul Melcher, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Alan L. Amann, Deputy Attorney Generals, for Plaintiff and Respondent.

In 2002, defendant and appellant Cesario Ramirez was a member of the Cuatro Flats street gang.  He and fellow gang members shot numerous times into a van occupied by two rival gang members, missing both occupants.  Defendant was convicted of two counts of premeditated attempted murder, along with two principal armed-weapons-use enhancements (Pen Code,[1] §§ 187, 664, 12022.53, subd. (c)).  In addition, he was convicted of shooting at an occupied vehicle (§ 246) and having committed the attempted premediated murders for the benefit of a criminal street gang (§ 186.22, subd. (b)(4)(B)).  He was sentenced to seven years to life, plus 20 years.

In 2006 defendant's convictions were affirmed on appeal in *People v. Ramirez* (Aug. 10, 2006, E037613) [nonpub. opn.] (*Ramirez*1).[2]  On July 12, 2022, defendant filed his petition for resentencing pursuant to Senate Bill No. 1437 (Stats. 2018, c.1015, § 4, eff. Jan. 1, 2019) (SB 1437), Senate Bill No. 775 (Stats. 2021, c.551, § 2 eff. Jan. 1, 2022) (SB 775), and former Penal Code section 1170.95[3] (Petition).  The Petition was summarily denied by the trial court.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] On our own motion, we take judicial notice of our prior opinion.

[3] Section 1170.95 was renumbered effective June 30, 2022, to section 1172.6. (Stats. 2022, c. 58 (A.B. 200), § 100, eff. June 30, 2022.)  We refer to the new numbering in this opinion.

Defendant contends we must reverse the trial court's order denying the Petition and remand the matter to allow the trial court to conduct further proceedings under section 1172.6. We affirm the denial of the Petition.

## FACTUAL AND PROCEDURAL HISTORY

A.     UNDERLYING FACTS[4]

On Saturday, December 28, 2002, Jesus Vargas and Mathew Dudone, Dodd Street gang members, drove by defendant's house in Vargas's van. Defendant was a member of a rival street gang, Cuatro Flats. Five or seven men were standing outside defendant's house. Vargas played loud rap music and laughed as he passed the house. The men did not look happy. As they were driving to another location after passing defendant's house, Vargas and Dudone were approached by a four-door, blue sedan containing defendant and two or three other men. The sedan had been in front of defendant's house when they had previously driven by the house.

A man leaned out of the rear passenger's side window of the sedan, holding a chrome revolver. The man fired four or five shots at Vargas's van, hitting the sun visor on the driver's side of the van. Vargas continued to drive. The sedan approached Vargas's van again, and a man leaned out of the passenger's side of the sedan holding a small silver handgun. The man fired three to five shots at the driver's side of the van. The sedan was found behind defendant's house after the shooting. Dudone and Vargas

---

[4] The facts are taken from our prior opinion. (*Ramirez*1, *supra*, Aug. 10, 2006) at pp. *1-5.)

3

identified defendant as the shooter immediately after the shooting, but were not certain at trial.

### B.    PRIOR APPELLATE PROCEEDINGS

Defendant filed an appeal.  He claimed on appeal that the trial court used the wrong standard in denying his new trial motion; that there was insufficient evidence to support his convictions as the witnesses did not identify him at trial as one of the participants in the shooting; and sentencing error.  (*Ramirez*1, *supra*, (Aug 10, 2006) at pp. *5-15}  This court affirmed the judgment.

### C.    PETITION

On July 12, 2022, defendant filed the Petition on a preprinted form.  He claimed to be eligible for relief based on an information filed against him that allowed the prosecution to proceed against him under a theory of felony murder, murder under the natural and probable consequences or other theory where malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.  Defendant claimed he was convicted of attempted murder following a trial and could not presently be convicted of attempted murder because of changes made to sections 188 and 189, effective January 1, 2019.

The Petition was considered at a hearing conducted on November 4, 2022. Defendant was represented by counsel.  The People argued that although originally a natural and probable consequence instruction was proposed to be given to the jury at trial, it was withdrawn and not given to the jury.  The People contended that no felony murder or natural or probable consequences instructions were read to the jury so defendant was

4

not eligible to be resentenced on his attempted murder convictions. The trial court summarily denied the Petition. Defendant filed a timely appeal from the denial of the Petition.

## DISCUSSION

Defendant contends on appeal that the trial court erred by denying the Petition. Defendant first contends, relying on *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*), that the absence of an instruction on the natural and probable consequences theory in this case is not dispositive as section 1172.6 also prohibits attempted murder convictions based on an imputed malice theory. He further claims the kill zone instructions given to the jury provided an inference that the jury convicted him under an imputed malice theory which is not permitted under section 1172.6 requiring remand for an evidentiary hearing.

SB 1437 made "significant changes to the scope of murder liability for those who were neither the actual killers nor intended to kill anyone, including certain individuals formerly subject to punishment on a felony-murder theory." (*People v. Strong* (2022) 13 Cal.5th 698, 707 (*Strong*).) SB 1437 was enacted to " 'ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*Strong*, at p. 708.) SB 1437 eliminated murder convictions premised on any theory of imputed malice, i.e. any theory by which a person could be convicted of murder for a killing committed by someone else, such as felony murder or the natural and probable consequences doctrine, unless it was proven that the defendant personally acted

5

with the intent to kill or was a major participant who acted with reckless disregard to human life. (§§ 188, subd. (a)(3), 189, subd. (e); see *Strong*, at pp. 707-708.) SB 775 expanded its coverage to individuals convicted of "attempted murder under the natural and probable consequences doctrine." (§ 1172.6, subd. (a); *People v. Saibu* (2022) 81 Cal.App.5th 709, 747.)

Section 1172.6 now provides as follows: "(a) A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *attempted murder under the natural and probable consequences doctrine*, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:

"(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or *attempted murder under the natural and probable consequences doctrine.*

"(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder.

"(3)  The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019."  (Italics added.)

In evaluating a petition under section 1172.6, the trial court considers whether the defendant has made a prima facie case for relief.  "If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition."  (*Strong*, *supra*, 13 Cal.5th at p. 708.)  If the defendant makes a prima facie showing of entitlement to relief, the court must issue an order to show cause and hold an evidentiary hearing.  (§ 1172.6, subds. (c), (d)(3).)  During the prima facie stage of review under section 1172.6, subdivision (c), the trial court "may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie" case for section 1172.6 relief.  (*People v. Lewis* (2021) 11 Cal.5th 952, 971.)  "The record of conviction will necessarily inform" the prima facie inquiry as a means "to distinguish petitions with potential merit from those that are clearly meritless."  (*Lewis*, at p. 971.)

Denial of a petition based on the failure to make a prima facie showing as a matter of law under section 1172.6 is a " 'purely legal conclusion, which we review de novo.' " (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101.)

Here, defendant was convicted of two counts of attempted murder.  Attempted murder requires " 'the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.' "  (*People v. Smith* (2005) 37 Cal.4th 733, 739; see also *People v. Gonzalez* (2012) 54 Cal.4th 643, 653-654 ["While implied malice

7

murder does not require an intent to kill, *attempted murder* does require a specific intent to kill"].)  Based on the plain language of section 1172.6, a person convicted of attempted murder is eligible for relief only if that conviction was based on the natural and probable consequences doctrine.  (*People v. Coley* (2022) 77 Cal.App.5th 539, 548 (*Coley*)["Section [1172.6] applies by its terms only to attempted murders based on the natural and probable consequences doctrine"].)

The record has been supplemented with the jury instructions.  The jury was instructed on attempted murder that in order to find defendant guilty, it must find "1.  A direct but ineffectual act was done by one person towards killing another human being; and  [¶]  2.  The person committing the act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being."  The jury was further instructed that in order to find defendant guilty of attempted willful, deliberate and premeditated murder, it must find, "that the attempted murder was preceded and accompanied by a clear, deliberate intent to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation."  They were further advised, "To constitute willful, deliberate, and premeditated attempted murder, the would-be slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, decides to kill and makes a direct but ineffectual act to kill another human being."  The jury was also instructed on aiding and abetting.  "A person aids and abets the [commission] [or] [attempted commission] of a crime when he or she:  [¶]  (1) With knowledge of the

8

unlawful purpose of the perpetrator, and [¶] (2) With the intent or purpose of committing or encouraging or facilitating the commission of the crime, and [¶] (3) By act or advice aids, promotes, encourages or instigates the commission of the crime." They were further instructed that mere presence or knowledge of the crime did "not amount to aiding and abetting." Finally, the jury was instructed, "Those who aid and abet a crime and those who directly perpetrate the crime are principals and equally guilty of the commission of that crime." An instruction on principal liability for natural and probable consequences that was originally requested was withdrawn.

Defendant's record of conviction and jury instructions show that he was either the actual killer or directly aided and abetted the attempted murders of Vargas and Dudone, and he acted with the specific intent to kill. The jury instructions as given did not permit the jury to convict defendant of attempted murder on a theory of natural and probable consequences. The instructions required the jury to find that defendant intended to kill when he acted as the perpetrator or shared the murderous intent of the actual perpetrator. Where, as here, the jury instructions given did not permit the jury to convict defendant of attempted murder under the natural and probable consequences doctrine, he is ineligible for relief under section 1172.6 as a matter of law. (*Coley*, *supra*, 77 Cal.App.5th at p. 548.)

Defendant relies on *Langi*, *supra*, 73 Cal.App.5th 972 to support his claim that section 1172.6 applies to convictions of attempted murder under a theory of imputed malice. The defendant in *Langi* was convicted of second degree murder after participating with three other men in the beating of a man who died from head trauma

9

after falling and hitting his head during the assault.  (*Id.* at pp. 975, 976-977.)  The jury in that case was not instructed on the natural and probable consequences doctrine but was given instructions both on aiding and abetting, and second degree murder.  The defendant insisted that there was no conclusive evidence of which of the four men dealt the fatal blow to the victim.  (*Id.* at pp. 975, 977, 980-981.)

The defendant in *Langi* appealed from the summary denial of his section 1172.6 petition.  The appellate court determined that the aiding and abetting instruction created an ambiguity in the context of second degree implied malice murder, which may have allowed the jury to "find the defendant guilty of aiding and abetting second degree murder without finding that he personally acted with malice."  (*Langi*, *supra*, 73 Cal.App.5th at p. 982.)  It observed that while the aiding and abetting instruction stated that a person aids and abets a crime if the person acts with knowledge of the perpetrator's unlawful purpose and with the intent to commit or encourage that crime, "the second-degree-murder instruction specified that the direct perpetrator of that crime need not act with the unlawful intent of causing death."  (*Ibid.*)  The *Langi* court concluded, "[i]f the perpetrator need not have had 'murderous intent,' certainly the aider and abettor need not have had such an intent."  (*Id.* at pp. 982-983.)  The *Langi* court held that the ambiguity in the instructions allowed an aider and abettor to be found guilty simply for intending to aid the perpetrator's act, without personally and consciously disregarding the danger to human life.  (*Id.* at p. 983.)

The result in *Langi*, *supra*, 73 Cal.App.5th 972 does not require reversal in this case. As noted, defendant was convicted of attempted murder, not second degree or implied malice murder. Here, the jury instructions did not include the second degree murder instruction that resulted in the ambiguity found in *Langi*. In contrast to second degree implied malice murder, the perpetrator of an attempted murder must have the specific intent to unlawfully kill another human being. (*Coley*, *supra*, 77 Cal.App.5th at pp. 547-548 [holding *Langi* inapplicable where the attempted murder conviction was based on jury instructions requiring intent to kill].) An aider and abettor to attempted murder shares the perpetrator's intent to kill; the possibility of imputing malice as *Langi* discussed is not present where the defendant is convicted of attempted murder as an aider and abettor. The record supports as a matter of law that defendant was not entitled to relief under section 1172.6.

Defendant also appears to contend that the instruction to the jury on the "kill zone" theory could have allowed him to be convicted of the attempted murders based on imputed malice.[5]

---

[5] To the extent that defendant is seeking reversal based on an erroneous instruction to the jury on the kill zone theory after the decision in *People v. Canizales* (2019) 7 Cal.5th 591, his petition does not afford him the "a new opportunity to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings." (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947.)

11

The jury was instructed, "A person who primarily intends to kill one person, may also concurrently intend to kill other persons within a particular zone of risk. [This zone of risks is termed the 'kill zone.'] The intent is concurrent when the nature and scope of the attack, while directed at a primary victim, are such that it is reasonable to infer the perpetrator intended to kill the primary victim by killing everyone in that victim's vicinity. [¶] Whether a perpetrator actually intended to kill the victim, either as a primary target or as someone within a ['kill zone'] [zone of risk] is an issue to be decided by you."

"[D]efendant may be convicted of the attempted murders of any [person] within the kill zone, although on a concurrent, not transferred, intent theory8." (*People v. Bland* (2002) 28 Cal.4th 313, 331 [defendant shooting a "flurry of bullets" into a car with three occupants intending to kill the driver could also concurrently intend to kill the other occupants of the vehicle]; see also *People v. Mumin* (2023) 15 Cal.5th 176, 191.) In *People v. Canizales*, *supra*, 7 Cal.5th 591, the court clarified "that a jury may convict a defendant under the kill zone theory only when the jury finds that: (1) the circumstances of the defendant's attack on a primary target, including the type and extent of force the defendant used, are such *that the only reasonable inference* is that the defendant intended to create a zone of fatal harm—that is, an area in which the defendant intended to kill everyone present to ensure the primary target's death—around the primary target[;] and (2) the alleged attempted murder victim who was not the primary target was located within that zone of harm. Taken together, such evidence will support a finding that the defendant harbored the requisite specific intent to kill both the primary target and

12

everyone within the zone of fatal harm." (*Id.* at pp. 596-597.) The *Canizales* court further noted that "past appellate court opinions articulating the kill zone theory are incomplete to the extent that they . . . imply that a jury need not find a defendant intended to kill everyone in the kill zone as a means of killing the primary target, even if their description of the theory is otherwise consistent with our opinion here." (*Id.* at p. 607, fn. 5.)

As previously stated, section 1172.6 only applies to attempted murder on a natural and probable consequences theory, not an imputed malice theory. Hence, even if the instructions on the kill zone theory could somehow be interpreted to allow the jury to convict defendant of imputed malice attempted murder, we need not resolve the issue of whether this was prohibited by section 1172.6. The kill zone instruction did not provide an inference that the jury could have found defendant guilty of imputed malice attempted murder. The record reflects the jury was specifically instructed that, as to each count of attempted murder, it had to find defendant intended to kill. In addition, they found defendant guilty of attempted, premeditated murder, which necessarily required a finding of intent to kill. Moreover, based on the kill zone theory instructions, the jury was instructed that the prosecutor had to prove, beyond a reasonable doubt, that defendant not only intended to kill one person (presumably Vargas, who was the driver of the van), but also intended to kill Dudone, who was also in the van. Assuming the jury relied on the kill zone theory to convict defendant, defendant has not identified any ambiguity in the jury instructions that may have misled the jury to convict him based on imputed malice.

Accordingly, we affirm the trial court's order finding him ineligible for relief as a matter of law and denying the Petition.

## DISPOSITION

The order denying defendant's petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

McKINSTER
Acting P. J.

CODRINGTON
J.

14